NEW-YORK,
Nov. 1809.

WILLIAMS
v.
ROGERS.

———— ◆ ————

WILLIAMS *against* ROGERS.

Ross *against* The Same.

THERE were several cross motions in these causes, which were submitted to the court, without argument.

The first motion was on the part of the defendant, and *John Coates*, as assignee of the plaintiff, *Williams*, to set aside the *test. fi. fa.* issued in the last cause, with costs; and also, that the overplus moneys in the hands of the sheriff, on the *test. fi. fa.* in the first cause, should be paid to *Coates*.

There was also a motion on the part of the plaintiff, *Ross*, to amend the return to the execution in his cause; and also for a rule on the sheriff to satisfy his execution out of the overplus moneys in his hands, arising on the execution in the first cause.

From the affidavits, the following facts appeared:

The writ in the *last* cause was returnable in *February* term last. The sheriff of *Essex* county, by virtue of the claimed the surplus moneys, and the equitable rights of the parties were not clearly ascertained; though they might, perhaps, in a case where the rights of the parties were clear, and there was no other means of satisfying the plaintiff in the second execution.

*The return of a writ of test. fi. fa. was allowed to be amended, on payment of costs. Inaccuracy in stating the return of a writ does not make it void, but voidable only. This court will not order a sheriff, who has overplus moneys in his hands, arising from an execution, to pay it over to a subsequent execution against the same defendant, especially in a case, where an assignee of the first judgment, and who was a purchaser at the sheriff's sale,*

*test. fi. fa.* in the *first* cause, on the 4th *May* last, sold all the right, &c. of the defendant, in certain tracts of land, &c. In the autumn of 1808, *Coates* purchased of the defendant a moiety of a tract of land, called the *Ore-bed Patent*, the deed for which is dated the 4th *October*, 1808, for the consideration of 6,000 dollars. This land was parcel of the lands sold under the said execution. *Coates*, to secure the tract he had purchased, purchased the judgment in the *first* cause, for 150 dollars, over and above the amount of the judgment. It appeared, that the defendant and *Ross* had agreed, that all the lands mentioned in the sheriff's advertisement, should be sold together; and they were sold together, with the assent of *Coates*, and purchased by him for 3,000 dollars. After the first judgment, and before the sale, the defendant had conveyed several parcels of the land, which were sold under the execution, and which sales *Coates* promised to confirm, before the sheriff's sale; and he has confirmed several of them since.

After the sale, the sheriff refused to accept the order or receipt of the defendant for the overplus moneys beyond the amount of the first judgment, alleging, that he had a few days before received a *test. fi. fa.* against the defendant, in the second cause, the amount of which was nearly equal to the overplus moneys on the first execution. He, however, took the defendant's receipt for the overplus, after satisfying the *second* execution, and his fees. The execution in the second cause was delivered to the sheriff a few days before the sale of the lands, and was made returnable " before our justices of our said court, at the city of *New-York*, on the 10th day of *May*," &c.

After the refusal of the sheriff to pay *Coates* the overplus moneys beyond the first execution, *Coates* paid to the sheriff as much of the overplus moneys as was requisite to satisfy the *second* execution; and the sheriff gave him a receipt, stating that it was to remain in his hands, as a

deposit, subject to the order of this court, either to be applied in payment of the judgment in the second cause, or to be returned to *Coates.* The moneys due on the second judgment were also secured by mortgage on the lands sold at the second sale by the sheriff.

The judgment in the first cause was prior to the sale to *Coates,* in *October,* 1808, and the judgment in the second cause was subsequent to the last *February* term. When *Coates* purchased at the sheriff's sale, the defendant owed him more than the amount of the overplus moneys, and therefore gave him the order to the sheriff, to discharge him. By articles of agreement between *Ross,* the defendant, and *Ananias Rogers,* dated the 5th *April,* 1809, stating the levy made on the execution in the first cause, and that a *cognovit actionem* had been given on that day by the defendant in the second cause; it was agreed, in case of a sale under the first execution, that *Ross* should furnish the said *Ananias Rogers* with money sufficient to satisfy the execution, or should appear at the sale, and become a purchaser; and that, if any other person should purchase, the overplus moneys should go towards satisfying the second execution; and it was also agreed, that the property should be sold on the second execution, prior to *October,* 1809.

*Ross,* in his affidavit, stated, that the defendant, on the day of sale, told him that *Coates* was indebted to the defendant in the sum of 2,000 dollars, and that he consented to the sale, on condition that the second execution was also to be satisfied out of the sale.

The *sheriff* returned on the *test. fi. fa.* in the first cause, that he had levied on a tract of land belonging to the defendant, and had sold the same on the 4th *May,* 1809; that *Coates,* who had purchased a considerable part of the land, after the first judgment, appeared at the sale with an assignment of the judgment; that all

NEW-YORK,
Nov. 1809.

WILLIAMS
v.
ROGERS.

the land was exposed to sale at once, and bid off by *Coates*, for 3,000 dollars ; (the first execution being for 1,519 dollars and 13 cents, besides fees ;) that two days prior to the sale, he received a *test. fi. fa.* in the second cause, for 1,366 dollars and 16 cents, besides interest and fees, issued on a judgment docketed the 14th *April*, 1809 ; that a considerable part of the lands being sold between the entry of the one judgment and the other, but a small proportion of the lands were bound by the second judgment, and part only was levied on, by virtue of the second execution ; that *Coates*, *Ross* and the defendant, agreed, on the day of sale, that the whole should be sold at once ; that after the sale, *Coates* produced an *order* from the defendant, dated the 4th *May*, 1809, directing the sheriff to discharge *Coates* from paying the overplus moneys, as he had settled the same with the defendant ; that he refused to accept this order, conceiving that he was bound to appropriate the surplus moneys towards the second execution ; and *Coates* claiming it as belonging to him, he received of him as much money as would satisfy the second execution, as a deposit, subject to the order of this court, whether the same was to be applied to the second execution, or returned to *Coates*, in pursuance of the order of the defendant. It appeared, that the defendant and *Ananias Rogers* were able to pay the second judgment, and that there were other lands of the defendant unsold.

*Per Curiam.* The motion on the part of the plaintiff, *Daniel Ross*, to amend the return to the execution, must be granted, on payment of the costs of the motion. The case of *Hunt* v. *Kendrick*, (2 *Bl. Rep.* 836.) is in point. The inaccuracy in the return does not render the process void, but voidable only. (2 *Burr.* 1187.) The case of *Drake* v. *Miller*, (*Coleman's Cases*, 85.) was contrary to

the established rule on this subject. It construed the statute with unnecessary severity, and certainly ought not to be extended to a case which is not precisely within the terms of it.

The other motion, on the part of *Coates*, the assignee of *Williams*, that the overplus moneys in the hands of the sheriff, be paid to him, and the cross motion on the part of *Ross* to have the overplus moneys paid to him, are both denied, without costs. The court do not think proper, upon the facts presented, to interfere either way. It is now the practice in the *English* courts, not to grant such rules upon the sheriff. (*Fieldhouse* v. *Croft*, 4 *East's Rep.* 510. *Knight* v. *Criddle*, 9 *East's Rep.* 48. *Willows* v. *Ball*, 5 *Bos. & Pull.* 376.) But the court do not say that they will never interfere when the equity of the case can be accurately discerned. If the claims of *Coates* were out of the question, it would be unreasonable to require the sheriff to pay the overplus moneys into the hands of the defendant, when he held in his possession a subsequent execution against the property of the defendant, and had no means of satisfying it, but out of those very moneys. In such a case, the court would probably be disposed to adopt the reasoning of the supreme court of the *United States*, in the case of *Turner* v. *Fendal*, (1 *Cranch*, 117.) that the money of the defendant may be levied on. In the present case, however, part, and probably by far the greatest part, of the overplus moneys in question, was raised out of lands purchased by *Coates*, before the entry of the second judgment, and part was raised out of lands bound by the second judgment. The proportion is not stated; and it is only stated, that the greater part of the land sold was purchased by *Coates* before the second judgment, and only a small proportion of the lands was bound by the second judgment. As the precise extent of the equitable rights of the claimant to the overplus moneys cannot

NEW-YORK,
Nov. 1809.

be ascertained, the court decline to make any rule on the subject. The court of chancery has more means, and can procure more light in adjusting the equity of the interfering claims.

First motion granted, and the others denied.