### ROGERS VS. BULLEN'S ADMINISTRATRIX.

Money may be taken in execution, if in possession of defendant.

Where money is made by a Sheriff at the suit of A. who has a legal or equitable claim to it, the Court, on the return of the writ, will, on motion, direct the Sheriff to pay the money over to an execution against A.

And when such money was made at the suit of A., as administrator of B., the Court will direct it to be paid over to an execution against A., as administrator of B., where it appears to be the eldest judgment against the estate of B., and no interfering or conflicting claims by administrator or other parties are shewn to exist.

### By CHARLTON, Judge.

THE administratrix of *Bullen* obtained a judgment against *Luke Mann*, and under a *fi. fa.* issued thereon, made the sum of $ , which sum being in the hands of the Sheriff of Bryan county, he was notified to hold the same subject to the order of the Court, on the application of this plaintiff, under an execution against the administratrix of *Bullen.* The money made on the execution against *Mann*, by consent has been placed in the hands of *William Davies, Esquire*, for the convenience of the parties, (such is the language of the statement submitted to me by *Wayne* and *Cuyler*,) subject to the order of the Court.

This is a motion by *Wayne* and *Cuyler*, for an order directing the Sheriff of Bryan to pay over the money thus collected under the execution of *Bullen's* administratrix vs. *Mann*, in satisfaction of a judgment obtained by this plaintiff, *Abner Rogers*, against the administratrix of *Bullen*. *William Craig*, the assignee of this judgment and execution of *Rogers* against *Bullen's* administratrix, in the affidavit he has laid before me, in support of the motion of his attorneys, swears, " that he has been diligently employed for several years past in seeking property to satisfy the above execution, that for this purpose he has employed counsel, that he has been unable to find any property of the defendant, or the estate of *Bullen*, liable to the same—that he verily believes

[Rogers vs. Bullen's Adm'ix.]

there is no property in this State which is liable to the above judg-
ment and execution—and that he has no reasonable prospect of
the payment of said debt, unless the money in the hands of the
Sheriff, be paid over on account of said judgment and execution."
In aid of the motion, the counsel for the assignee has referred to
1 *Dougl.* 230. 1 *Cranch.* 116, 117. 12 *John.* Rep. 395, 320.
*Davies* and *Berrien*, opposed to the motion, relied upon the cases
in 4 *East.* 510 : 9 *East.* 46 : 5 *John.* Rep. 163. With these con-
flicting authorities before me, the point and question for my de-
termination is—can this Court, under the facts and circumstances
submitted, direct the money made under the execution against
*Mann*, to be paid over to this plaintiff? I shall place in review
the authorities which have been cited on both sides, and endea-
vour to establish the principles and doctrines infused by them into
the jurisprudence of Georgia. Cases of this complexion, must, I
presume, have before occurred within this, or other districts of
this State, but, as usual, I can find no recorded decision to guide
me, and therefore must consider this as a case of the first impres-
sion, (at least in this district)—encumbered with all the difficul-
ties which commonly associate themselves with an unadjudicated
principle. The first case, in the order of those cited in support
of the motion, is *Armistead* vs. *Philpot*. (1 *Dougl.* 230.) In
that case, " *Kirby* moved for a rule to shew cause, why the Sher-
iff of Middlesex should not retain in his hands, for the use of the
plaintiff, a sum of money which he had levied for the present de-
fendant, in another action in which he was plaintiff. The ground
of the motion was, that the plaintiff had not been able to levy on
the effects of the defendant to the amount of his demand." In all
its features, this case is similar to the one before us. The motion
was not opposed, " only so far as that the attorney's bill in the
cause in which the money had been levied, should be paid in the
first instance." The rule was made absolute, (says the authority)
with that qualification. Lord *Mansfield* said, " he believed there
were old cases where it had been held that the Sheriff could not

take *money* in execution even though found in the defendant's *scrutore*, and that a quaint reason was given for it, viz. that money could not be *sold*. It is perfectly surprising that the Judges and bar of the Court of *King's Bench*, should, in the year 1779, agree, that the motion of *Kirby* was of the first impression : and that such slight illustration of the doctrine, should have been afforded by the learned Ch. Justice. The next case is that of *Turner* vs. *Fendall*. (1 *Cranch*. 117.) The opinion of the Court is delivered by Ch. Justice *Marshal*, a man not inferior to Lord *Mansfield*, or any other Judge who ever sat in Westminster Hall : at least that is the opinion formed by my humble intellect, and as an American citizen, I feel great pleasure and pride, in announcing it from this seat. In this case it is stated, that " *Turner* had been sergeant of the town of Alexandria, and had returned on a writ of *fieri facias*, issued on a judgment rendered by the Court of Hustings, for that corporation, in favor of *Philip Richard Fendall*, that he had made the debt and levied thereon a writ of *fieri facias*, issued on a judgment obtained by *William Deneale*, against *Robert Young* and *Philip R. Fendall*, merchants, trading under the firm of *Robert Young & Co.*" One of the errors assigned in the translation of this case to the Supreme Court, was, " that the officer had a right to levy the execution of *Deneale* on the money of *Philip R. Fendall*, in his hands." The Ch. Justice says, (in 1801) " the principle that an execution cannot be levied on money, has been argued to be maintainable, under the authority of adjudged cases. Yet, (continues he,) no such adjudged case has been adduced." The Ch. Justice adverts to the case of *Armistead* vs. *Philpot* in *Douglass ;* to *Rex* vs. *Webb*, (2 *Show*. 166,) where it is decided, " that by *levari facias*, the Sheriff may take ready money ;" to *Dalton's* Sheriff, 145, where it is also stated in terms, that money may be taken in execution on a *fieri facias*, and *Barnes'* notes, 214, *Staple* vs. *Bird*, " where a Sheriff had levied an execution on money in his hands, that he should, notwithstanding this execution, pay the money to the person enti-

tled to the benefit of the first judgment." This case from *Barnes* is thus reported in his notes. "*Staple* vs. *Bird*, Trin. 32 & 33, Geo. 2: defendant being arrested by *capias ad satisfaciendum*, 7th May, 1759, paid to Sheriff of *Kent's* bailiff 30*l.* 6*s.* 6*d.*, the sum mentioned in the writ, which sum the bailiff immediately sent to the under Sheriff in London ; on 10th of same month, May, Mr. *Elihu Bridcoak*, plaintiff's attorney, (to whom the judgment whereon said *ca. sa.* was issued, had been assigned by plaintiff,) demanded said money of the under Sheriff, who excused himself, the *ca. sa.* not being then returnable. At the return the Sheriff returned, that he took defendant who paid into his hands said 30*l.* 6*s.* 6*d.*, and that afterwards, and before the return, to wit. 11th May, a *fi. fa.* against the goods of *Staple*, the plaintiff in the *ca. sa. advs. Bird*, executor, &c.—the defendant in the *ca. sa.* for 29*l.* 10*s.*, was delivered to the Sheriff, and that he levied the same out of the money in his hands, which with poundage exceeds the money received under the *ca. sa.* Upon this return, and an affidavit of the fact, *Bridcoak* applied to the Court, and obtained a rule for the Sheriff to shew cause why he should not pay him said 30*l.* 6*s.* 6*d.* deducting poundage, which rule was made absolute upon hearing counsel on both sides." I give this case at length, because the Ch. Justice of the United States has given a weight of authority which no other tribunal has bestowed upon it, and because it contributes to the establishment of his doctrine in the case of *Turner* vs. *Fendall.* Alluding to this case in *Barnes*, the Ch. Justice says : "It is true in that case, the person in whose name the judgment was rendered, was not entitled to the money received under it, but the case is not stated to have been decided on that principle, and the very frequency of such a state of things, furnishes an argument, of no inconsiderable weight, against the right to levy an execution on money so circumstanced." This case from *Cranch* establishes then the proposition, that "money may be taken in execution, if in possession of the defendant ;" but says the Chief Justice, " the question of greater difficulty is,

whether it may be taken by the officer before it has been paid by the officer to the person entitled to receive it?" The case decides that the Sheriff, before the return day of the execution, may pay the money over to the creditor : otherwise, the mandate of the writ to bring the money into Court must be obeyed, " there to be disposed of as the Court may direct." " This was done," (says the Ch. Justice,) " in the case of *Armistead* vs. *Philpot*— and this ought to be done whenever the legal and equitable right to the money, is in the person, whose goods and chattels are liable to such execution." This case, adjudged by the Supreme Court of the United States, removes every doubt and difficulty as to the granting the application before me—unless this case and its principles can be superseded and controlled by the authorities adverted to by my brother, *Davies.* The first in order, of these authorities, is the case of *Fieldhouse* vs. *Croft.* (4 *East.* 510.) It is thus reported. " *Wigley* moved for a rule to shew cause, why the sum of 317*l.* 11*s.* 9*d.*, belonging to the defendant, in the hands of the late Sheriff of Worcester, should not be paid over by him to the present plaintiff, which money was part of a balance of 900*l.* and upwards, in the late Sheriff's hands, over and above the sum levied by the same Sheriff under a prior execution—and notice of this motion was given to the defendant, and to the late Sheriff. (The case then states the facts of the affidavit on which the rule was moved.) The plaintiff had recovered judgment for 307*l.* and costs, in February last, against the defendant, in another action in the Court of pleas in the city of Worcester, on which a writ of *fieri facias* issued to the Sergeants at Mace, who levied thereon 45*l.* 10*s.*, and returned that the defendant had no other goods in the city. Whereupon the record being removed into this Court, another writ of *fi. fa.* issued to the present Sheriff of the county, but no other effects of the defendant could be found whereon to levy, than these in the hands of the late Sheriff, which he had notice not to pay over. *Wigley* admitted that he could find no authority in print : but the case which came nearest was

*Armistead* vs. *Philpot*, where a rule was made absolute, (though without resistance, except so far as regarded the lien of the attorney,) for staying in the Sheriff's hands for the use of the plaintiff in that action, money, which the Sheriff had levied for the use of the defendant in another action, in which he was plaintiff—Lord *Ellenborough*, C. J.—"The question comes to this, whether a plaintiff can have execution of *money* belonging to the defendant in the hands of a third person ?   This is a motion of the *first impression*, and shall not have its first effect from me.   It was the duty of the late Sheriff, if he took in execution more than was necessary to satisfy the former execution with which he was charged, to pay over the surplus immediately to the defendant— *per curiam*, rule refused."

It will be perceived, that the Court takes no notice of the case of *Armistead* vs. *Philpot*, or any of the more ancient cases which decide that money may, or may not be taken in execution.   This was a determination of the Court of King's Bench in 1804, and Lord *Ellenborough* says, it is a motion of the first impression, as had been also previously said by the bar and Court of King's Bench in 1779, consequently the cases in *Shower*, *Dalton's Sheriff*, and *Barnes*, must be considered as no authorities for the principle, that money may be taken in execution on a *fi. fa.*, and that no combination of circumstances similar to these of *Armistead* vs. *Philpot*, or the case now before me, could legally justify the direction given in *Armistead* vs. *Philpot*, or by the Supreme Court in *Turner* vs. *Fendall.*   The next case referred to by *Davies* and *Berrien*, was *Knight* vs. *Criddle*. (9 *East.* 48.)   I shall also give that case as I find it reported.   "The present defendant had recovered judgment and sued out execution against one *S. H.* for his debt and costs ; and in discharge of that execution, *S. H.* paid into the hands of the Sheriff of Hantz, 60*l.* in Bank notes ; and before that money was paid over, the present plaintiff recovered judgment, and sued out his writ of *fi. fa.* for 33*l.* 10*s.*, debt and

PART I.—A. 2.

costs against the defendant, which was delivered to the same Sheriff, and now upon an affidavit of these facts by the Sheriff's officer, and that he had in pursuance of the Sheriff's warrant levied the debt and costs in this cause out of the 60*l.* in Bank notes, remaining in the Sheriff's hands, and that he could not find any other goods and chattels of the defendant, whereof to levy the said debt and costs. *Gaselee* moved for a rule to shew cause why the Sheriff, *Hants*, should not pay over to the plaintiff the amount of his debt and costs in this cause, out of the sum received by him on account of the defendant as before mentioned, and in the meantime retain the sum in his hands, and he cited *Armistead* vs. *Philpot*, where a similar rule was made absolute without opposition, except so far as to secure the attorney's lien for his bill. But by Lord *Ellenborough*, C. J. : "we cannot force the defendant to come here to shew cause against a rule founded on the assumption that money (and Bank notes for this purpose are the same,) may be taken in execution. It is an innovation on the law, which ought not to be admitted. The case from *Douglass* was by consent. The other Judges concurred in refusing to grant a rule to shew cause·" *Gaselee* does not advert to the case in 4 *East.* decided in 1804, but invokes, as did *Wigley* in that case, *Armistead* vs. *Philpot*. This case of *Knight* vs. *Criddle*, decided in 1807, notices none of the ancient cases, pays no respect to the case of *Armistead* vs. *Philpot*, because it was by consent—and states the English law always to have been, that money could not be taken in execution, nor could any direction be given by the Court as is contained in the case from *Douglass*—unless I presume, as in that case, by consent. It results that if the judgment of the Supreme Court of the United States is founded upon the supposed doctrine and principles of English Law, and was particularly influenced by *Armistead* vs. *Philpot*, I hope, informed as I am, by the cases in *East*, that the law of England was not contained in the cases relied upon by the Chief Justice *Marshall*, and that any British authority which announced that money could be taken in execution,

or that the Court could direct it to be paid over under the facts and circumstances of *Armistead* vs. *Philpot*, and *Turner* vs. *Fendall*, was "an innovation on the law which ought not to be admitted,"—I hope, I say, that thus informed, I would not incur the imputation of presumption or temerity in declaring, that the law of the Supreme Court in *Turner* vs. *Fendall*, was not the law of Georgia. But Chief Justice Marshall in delivering the opinion of the Supreme Court, approves of what was done in *Armistead* vs. *Philpot*, and without reference to any binding authority of that case, or any other British adjudication, decides that what was done in that case, on principle, "ought to be done whenever the legal and equitable right to the money is in the person whose goods and chattels are liable to such execution." And without declaring it as a conclusion from British authorities, he also announces as the opinion of the Court, "that money may be taken in execution if in the possession of the *defendant*," and in another part of the opinion, says, "the Court can see no reason in the *nature* of the *thing*, why an execution should not be levied on money. That given in the books, viz. that it cannot be sold, seems not to be a good one. The reason of a *sale* is, that money only will satisfy the execution, and if any thing else be taken, it must be turned into money ; but surely that the means of converting the thing into money need not be used, can be no adequate reason for refusing to take the very article, to produce which is the sole object of the execution." On principle then, and according to the nature and fitness of things, the propositions are settled by a decision of the Supreme Court of the United States, (to which I bow with submission,) 1. That money may be taken in execution. 2. And that where money is made on the execution of *A.* (and in the hands of the Sheriff) who afterwards becomes defendant at the suit of *B.* if *A.* has "an equitable and legal right to the money," the Court has power, and ought to direct the Sheriff to pay the money in satisfaction of *B's* execution.—But admitting this to be the law of this country, in opposition to English decis-

ions, still it is contended by Mr. *Davies,* that the Court ought not under the circumstances of the case before it, grant the motion, because, there may be interfering and conflicting claims of the administration to prevent: and he relies upon the case of *Williams* vs. *Rogers,*and *Ross* against the *Same* reported in 5 *Johns,* p. 163, which shews, that the Court will not grant a motion like that now submitted, where there are conflicting claims or equitable rights of parties to be ascertained. The case cited is a decision of the Supreme Court of the State of New-York in 1809—and on the point urged by Mr. *Davies,* the substance of the decision is thus mentioned in the marginal reference. "This Court will not order a Sheriff, who has overplus money in his hands, arising from an execution, to pay it over to a plaintiff on a subsequent execution against the same defendant; especially in a case, where an assignee of the first judgment, and who was a purchaser at the Sheriff's sale, claimed the surplus moneys,—and the equitable rights of the parties were not clearly ascertained, though they might, *perhaps,* in a cause where the rights of the parties *were clear,* and there was no other means of satisfying the plaintiff in the second execution." In this case the interposing and conflicting claims of the parties appeared from respective statements and affidavits, which induced the Court to say : "as the precise extent of the equitable rights of the claimant to the overplus moneys cannot be ascertained, the Court decline to make any rule on the subject. The Court of Chancery, has more means, and can procure more light in adjusting the equity of the interfering claims."—But how extremely dissimilar is the case before me. No *conflicting* or interfering claim by the administratrix is presented requiring this or a chancery jurisdiction to ascertain or adjust it. No plea was filed to the suit of this plaintiff by which I could be placed in pursuit of any legal or equitable right of the administration, or any other party which would by ulterior investigation defeat the application of the moneys, made under the execution against *Mann,* to the satisfaction of this plaintiff's judgment.

[Rogers vs. Bullen's Adm'ix.]

Years roll away. The assignee of the judgment swears, that during these years, or for years past, he has been endeavoring to trace other property of *Bullen*, without success, and during all this time, neither the administratrix nor any other party, interposes any claim or pretension by which this money could not be considered as assets liable to *Rogers'* judgment, *now*, or *quando acciderint.* Then in the absence of all matter of record, or any right legally or equitably exhibited by the administratrix, by means of which she might substract this money as assets of the estate of *Bullen*, I am required on the oral suggestion of counsel that such claim may be exhibited, or such right may be in existence, because the contrary does not appear, I am required, I say, upon such suggestion patiently to wait for its interposition, after this *crassa negligentia* of the administratrix, and that too, without any assurance of which I could take official cognizance, that such claim will ever appear. I cannot persuade myself, that upon any principle of law or equity, under the circumstances of this case, I would be justified in withholding from the assignee of this judgment, his immediate right (it being the eldest judgment against the estate of *Bullen*) to receive this money from the Sheriff of Bryan, or from the gentleman in whose hands it is placed for the convenience of all parties.

It is therefore *ordered*, that the amount of the proceeds of the judgment against *Luke Mann* at the suit of the administratrix of *Bullen*, or so much as will in part, or the whole, satisfy the judgment of *Abner Rogers* against said administratrix be paid over by said William Davies, Esquire, to the attorney of the plaintiff of record or to his order.

WAYNE & CUYLER, for the motion—DAVIES & BERRIEN, *contra.*