# Case No. 12,325.

## The SANTA ANNA.

[1 Blatchf. & H. 79.] [1]

District Court, S. D. New York. May, 1829.

MARITIME LIENS—SURPLUS AFTER SALE—MASTER'S CLAIM FOR WAGES—DISBURSEMENTS.

After the liens upon a libelled vessel are satisfied out of the proceeds of her sale, the surplus funds remaining in court are subject, as against the owner, to the master's claim for wages and for disbursements on account of the vessel up to the time of her seizure, but not for wages or disbursements after the time of her seizure.

[Cited in The Balize, 52 Fed. 415.]

These were petitions in regard to the disposition of the surplus moneys arising from the sale of a libelled vessel, the brig Santa Anna.

BETTS, District Judge. This vessel has been libelled and sold to discharge seamen's wages, and the surplus, after satisfying the libellants, has been paid into court. Two petitions are now presented for these proceeds. One is by the master, who was engaged in June, 1828, and navigated the vessel until she was sold, and who seeks satisfaction for his wages and disbursements on account of the vessel, for that period. The other is by one Tracy, a creditor of the former owners of the vessel, and who represents that she was assigned to him as security for advances made in December, 1827. The letter of the former owners, to which he refers as evidence of the pledge of the vessel, asserts a positive sale of the vessel to Tracy for $4,000, and that he is her true and lawful pro-

[1] [Reported by Samuel Blatchford, Esq., and Francis Howland, Esq.]

prietor. It would be unjust to allow him, clothed with this double capacity of assignee or owner, as his interest may lead him to act, now to put forward the one which may be most to his own advantage, and most prejudicial to the other petitioner. If, therefore, the claim of the master will be at all strengthened by holding Tracy to the character of owner of the vessel, he has a right to require him, under the proofs presented, to stand in court in that capacity alone.

It appears to me that a very essential difference exists between the privileges of a creditor who has a prior bona fide lien on a vessel, and those of the owner, in a controversy with the master relative to the proceeds of such vessel after her sale upon liens. As against such creditor, I do not well perceive how the master could maintain a claim for his wages, as the law seems settled that he has no lien on the vessel in that behalf, which he could enforce specifically against her or against the moneys in court which represent her. The Favourite, 2 C. Rob. Adm. 232; The Grand Turk [Case No. 5,683]. But however this may be, he is entitled to payment out of these specific moneys, as against the owner. As to his wages, he has a right to resort to this court for their recovery, by an action in personam against the owner. Willard v. Dorr [Id. 17,679]. The demand of a master, equally with that of a seaman, for wages, falls within the cognizance of a court of admiralty; and the decree, when rendered, will be made alike efficacious with respect to any means of the owner within reach of the process of the court.

Although the marshal might not be able, by his execution, to reach funds deposited in court, still the court would not allow those funds to be paid over to the owner until the decree was satisfied, as no one can obtain the funds without satisfying the court that he is equitably entitled to them. The equitable power of the court would be ample to retain the funds, to enable a creditor to pursue his relief against them by bill in equity, or it might direct their application on its decree for a maritime demand, upon the petition of the libellant in such decree. Courts proceeding according to the course of the common law, have exercised a like authority over funds placed in court by virtue of process, or remaining in the hands of the officers of court. Upon that principle, moneys in the hands of a sheriff, after satisfaction of the process which made them, have, on summary motion, been applied upon executions subsequently delivered to him. Armistead v. Philpot, 1 Doug. 231; Ball v. Ryers, 3 Caines, 84; Van Nest v. Yeomans. 1 Wend. 87. See, however, Williams v. Rogers, 5 Johns. 163, and Willows v. Ball, 2 Bos. & P. [N. R.] 376.

In some of the states of the Union, such funds have, by statute, been made subject to levy. The court of chancery, too, will exercise its broadest powers to retain and decree for a suitor whatever moneys, derived from or held by those who ought to respond to him, may be within its control.

The authority of a court of admiralty is not less extensive and salutary, and, under like circumstances, is exercised in the same manner. Accordingly, although, for reasons very little consonant with the enlarged and remedial principles cherished in this court, a master cannot maintain an original suit in rem for wages, or for materials or advances furnished by him to the ship under his charge, yet he is allowed to come in and obtain a satisfaction for his services and for such advances, from surplus moneys in court arising from a sale of the ship. Gardner v. The New Jersey [Case No. 5,233]; Zane v. The President [Id. 18,201]. See, also, The John, 3 C. Rob. Adm. 288. The justness of the master's demand, in this case, is admitted by the other petitioner. A part of it is for disbursements made for the ship, and falls within the terms of the case of Gardner v. The New Jersey [supra], and the rest is for his own wages, and comes within the principles already stated. The whole, it seems to me, should be treated by this court as if evidenced by a decree for the amount. In the case of such a decree in form, the money would be withheld from the owner until the decree was satisfied; and I shall apply the like principles to the present state of facts. Holding that the master is entitled to have Tracy regarded in this application as the real owner, I shall order payment out of the surplus moneys in court to the amount of the master's account, both for disbursements and for his own wages up to the time the vessel was seized.

The account of the master which accrued subsequently, did not arise from his charge and responsibility as master of the vessel, as she was then in the custody of the law; and if he was employed in port as keeper, by the marshal, he must obtain his compensation from the marshal; and it will be then for the court to decide whether the payment will be allowed the marshal in the adjustment of his accounts against the vessel. It does not appear that Tracy ever assented to that employment of the master, or had any knowledge of it. Nor, if his acquiescence could be shown, would it probably vary the case. as the contract of Tracy or of the marshal with the master, would be regarded as personal and not of a maritime character coming within the jurisdiction of the admiralty, none of the parties having had authority, during the arrest of the vessel. to make contracts respecting her, except under the express order of the court. Order accordingly.