### Case No. 4,637.

### The FANNY.

[1 Betts, D. C. MS. 62.]

District Court, S. D. New York. Feb. Term, 1841.

BETTS, District Judge. The steamboat Fanny having been sold under a decree of this court, and the proceeds brought into court, various petitions were filed claiming satisfaction of demands accruing for materials furnished or services performed on board the boat. These petitions were referred to the clerk to examine and marshal the respective claims, and report to the court the amounts due thereon and the considerations upon which they rested. On the coming in of the report, exceptions have been taken to the allowances made therein, and, as the right of the several petitioners to any compensation out of the fund is an open question not yet adjudged by the court, it is also objected that no part of the respective claims can be recovered in this manner. The petitioners in their own behalf thus become, in some instances, the opposers of the petitions of others.

George C. Knight claims to be entire owner of the steamboat, and entitled to all the funds after satisfaction of such demands as may be deemed to be liens on the boat. But the title of Knight to more than a moiety of the boat is contested by Baucher, and upon the proofs it is rendered at least doubtful whether he can maintain a right to more than one half the proceeds, and even strong shades of suspicion are thrown upon the justice of his claim to that. This part of his claim is not, however, directly contested before the court, Gibbons, the only one shown to have an interest in it, not having made himself in any way a party to these proceedings. It is a sufficient objection to the petition of Knight that his right to the fund is in dispute, and that the proceedings are not so shaped that the matter can now be properly and definitely decided. If this court is competent to the adjustment of the equitable title of the respective parties to these monies, it could not assume such jurisdiction in a summary and ex parte proceeding, but would require the case to be put in such form that all parties could litigate upon their interests, and that the judgment of the court could be subject to review. Courts of admiralty would, as a general rule, regard an objection to the title of the petitioner to the fund as sufficient to stay all summary action in the matter. The Maitland, 2 Hagg. Adm. 253. Accordingly, the monies counter-claimed by Knight and Baucher must remain in court until the one or the other establishes a clear title to them. And unless some one intervenes in respect to the other half, or the case is removed to a higher court upon such grounds as shall bring the whole subject passed upon here under review, I shall order that portion of the funds to be paid over to Knight or his proctor, after such deductions as may be hereafter specified.

In respect to the other petitions, it may be considered an established principle governing courts of admiralty in the disposition of remnants and surpluses remaining in court, that they will be applied in satisfaction of outstanding claims in themselves or their origin liens on the thing out of which the fund is produced. Gardner v. The New Jersey [Case No. 5,233]; Brackett v. The Hercules [Id. 1,762]; Harper v. New Brig [Id. 6,090]; 5 Wend. 540. This doctrine is probably subject to the exception that the lien be of a character to be enforced in admiralty (The Robert Fulton [Case No. 11,890]), and that the matter in demand is not controverted (2 Hagg. Adm. 253). Libels were filed upon several of these demands against the boat, and the decisions rendered by the courts in those suits apply to the character of most of the other petitions. The lien claimed for those demands was under the statute, and the court decided that the cases did not come within the statute, and the libels were accordingly dismissed. The matter of the same libels is now presented in the form of petitions against the proceeds in court, and they are supported by arguments which assume that the court, by virtue of its general powers over the proceeds, can exercise equities existing in respect to them, or the owner, when distribution of the funds is desired, which could not be enforced here by a direct action in rem or in personam. Such doctrine would necessarily import that the court can direct accounts to be taken between such parties, and indeed perform all the essential powers of a court of chancery in order to arrive at a just adjustment of the respective rights and equities of parties. Such powers are out of the sphere of its jurisdiction, even in respect to causes pending in court, and indisputably within its cognizance. [The Orleans v. Phoebus] 11 Pet. [36 U. S.] 175. In respect, therefore, to all the cases of material men, wharfingers, etc., the demands not being, in themselves or their origin, liens which could be enforced in this court against the boat, they are not entitled to come upon the fund in court under the principle on which that species of relief is ordinarily administered. This court has extended the rule beyond the limits assigned it in the Pennsylvania district, and applied it to demands not controverted which are within the jurisdiction of the court, although clothed with no privilege, and it has accordingly held that such claims suable here in personam are entitled to like relief out of the remnants as if they carried liens with them. It seems to me there is a most impressive equity sustaining such decision, when the justness and amount of the demand is not disputed, and the matter is in prosecution in the court holding the funds which ought to satisfy it. This carried the doctrine no further than courts of law go in extending relief to their suitors. They order, as matter of course, monies raised from a party and brought into court on one execution to be

paid over on other executions against the same party (Doug. 219); [Turner v. Fendall] 1 Cranch [5 U. S.] 117), and sometimes even direct the transfer to be made by the sheriff, the money and the subsequent execution being in his hands (3 Caines, 84), especially if the right of the junior execution creditor is ascertained (5 Johns. 163; 1 Wend. 87). If, then, the demand is authenticated by a decree, it would fall directly within the principle of those cases, and, instead of enforcing the decree by execution against the property or person of the respondent, the court might order it satisfied out of his surplus about to be paid him from the registry. Nor would the principle be any way varied by regarding a demand not disputed as standing upon equal equity with one reduced to judgment, and discharging it without waiting till it is pushed to a formal decree, and charged with a heavy burthen of costs.

Two objections intervene to prevent the most of the petitioners availing themselves of either of those rules for the admission of their demands: First, that they establish no right of action against Knight, who claims the entire fund, the debts having accrued previous to the 5th of December, 1840, when he became owner of the boat; and, second, that he denies the liability of the boat to these debts, and he is entitled to be heard in defence before his property shall be appropriated to their payment. It is true that Sir Wm. Scott in one instance did admit claims to be satisfied out of the remnants in the registry, for which no action could have been sustained in that court. The John, 3 C. Rob. Adm. 288. Sir Christopher Robinson doubts the authority of the court to that extent (The Maitland, 2 Hagg. Adm. 253), and it would certainly present somewhat of an anomalous doctrine to admit the power of the court to pass upon and satisfy demands indirectly and without suit of which it could take no cognizance under any form of action. I think this objection is conclusive against the admissibility of those accounts which fall within it, and accordingly the petitions of Howell & Coffee, Adam Hall, M. M. & R. Martin, Jesse A. Marshall (for $113.46), John W. Latson, and Moses C. Hall must be rejected.

There is a further objection to the jurisdiction of the court, which I do not now feel called upon to decide; that is, that a party can maintain no action in personam in admiralty for materials or repairs furnished a domestic vessel. The emphatic and vehement denunciation of such jurisdiction by two distinguished judges of the supreme court would be sufficient to induce this court to proceed cautiously in declaring a different doctrine, when the exigencies of the case did not demand a decision upon that point,— [Ramsay v. Allegre] 12 Wheat. [25 U. S.] 620; Bonaparte v. Camden & A. R. Co. [Case No. 1,617]; Bains v. The James and Catherine [Id. 756],—and therefore this decision is not to be understood as asserting or disclaiming such jurisdiction.

The claim of John W. Latson for wages as master is obnoxious to a further objection, that it is at least exceedingly questionable upon the proofs whether he was not half owner of the boat during all the time he served as master, and in such case the court would expect far more full and explicit evidence of his right to raise a debt for his services against his co-owner, than is now furnished in support of his demand. Either objection is sufficient to prevent that demand being levied upon the fund in court.

Jesse A. Marshall seeks payment of $160 out of these proceeds (besides the claim for the $113.46, already considered and disposed of), and founds this part of his petition upon the allegation that those monies were advanced by him to discharge seamen's wages and to relieve the boat from arrest therefor, and also to supply wood to enable her to complete her trip. The wages being liens on the boat, admiralty regards a third party who interposes, and pays them, as equitably acquiring the privilege of the sailor, at least so far as to be entitled to bring in the demand against surpluses in court (Gardner v. The New Jersey [supra]) in behalf of the master, and this court has in repeated instances applied it as well to other third parties as the master. And to entitle the payment to such privilege it need not appear to have been made directly and specifically in satisfaction of the lien claim. A loan of money to the owner or master to be applied by him to that object would come within the fair range of the principle, because it justifies the intendment that the advance is made on the credit of the vessel, and, if not a mere credit to the borrower personally, the privilege may be considered as transferred, upon evidence fairly importing that the security of the vessel was contemplated at the time, and was a moving consideration of the advance. This doctrine is constantly applied in upholding liens against foreign vessels for advances made the master to procure her necessary supplies. The advance of money required by the necessities of the vessel is regarded the same as furnishing materials or services in kind themselves, and will support an implicit hypothecation of the vessel in security of the advance as well as a direct one by bottomry bond. Manchester v. Milne [Case No. 9,006]; Davis v. Leslie [Id. 3,639]; 3 Paige, 323. Such novation may be regarded one of the most wholesome equities derived from the civil law. It must undoubtedly appear that the demand the loan extinguishes was a privileged one, and therefore the petitioner in this case, can acquire no higher advantage than the party whose claim he represents could have in a like proceeding. All that part of the account re-

lating to the purchase of wood (5 Wend. 510) or payment of costs on bonding the boat is accordingly rejected, and the petitioner is entitled to be paid the sums advanced by him and paid over by the master for seamen's wages. This sum is not clearly specified. Twenty one dollars was paid Williams, but the amount paid the other two who had arrested the boat does not appear from the petition or proofs. The petitioner may have a further reference to the clerk to ascertain the sums paid Ten Eyck and Waters, out of the $60 advanced by him, and also their costs of that suit, if paid out of his money, and receive payment therefor from the fund in court.

Nathaniel Milliken seems also to have a claim for wages. There is a confusion and clashing of the proofs in relation to this demand, not easily to be reconciled or comprehended. The clerk reports $34.75 due him, and I think the fair result of all the proofs, derived from direct testimony and the declarations and admissions of the parties, is that there was a balance of fourteen or fifteen dollars due him on the 6th of January for his services on board subsequent to his settlement of the 10th of December, and that he continued afterwards with the boat until her sale, rendering services on board. The testimony of Birdseye, if legally admissible (which is at least doubtful, as there is strong proof that he is a party in interest), that he had paid the petitioner in full, is quite irreconcilable with his offers and declarations to the proctor, in what he terms an attempt to compromise. The court perceives no reason upon which that negotiation can be regarded as an offer for compromise. Birdseye, according to his representation, had no interest in the boat or her proceeds. If this was so, he was only an agent of the owner, and the expense having already all accrued, or nearly so, that the petition could involve, and withdrawing this small claim not tending to release the fund or quiet the litigation pending, no satisfactory reason is shown for offering twenty or thirty dollars to compromise as he alleged a demand he swears to be wholly unfounded and even to have been paid off in full by himself. Ellis proves that there was admitted by Birdseye to be $14 due the petitioner on the 6th of January, which the petitioner then said was in full of his claim to that time; and the preponderance of proof certainly is that he continued on board entitled to wages at least 20 days subsequently. There was also an unpaid arrearage of wages of $34 due the 10th of December previous, and I am satisfied the payments made by Birdseye, if applied upon the whole debt outstanding in favor of Milliken, would still leave due him about the sum reported by the clerk. That report is accordingly affirmed.

The decree of the court will accordingly be that Marshall and Milliken recover the said respective sums out of the proceeds, together with their costs, to be taxed.