## WHEELER *vs.* SMITH.

S., a constable, having in his hands an execution against the property of M., levied on a horse, and advertised it for sale. Prior to the day of sale, an attachment came to his hands, against the property of M., by virtue of which he attached the same horse. The property was then sold on the first execution, and a sufficient sum was raised to pay the first execution, and leave a surplus to pay the amount due in the attachment suit. After the sale of the horse, judgment was obtained in the attachment suit, and execution issued thereon to S., who levied on the same money which he had received on the sale of the horse. He sold such money, and applied the avails to satisfy the execution. *Held* that the lien of the attachment, on the horse, by operation of law became transferred, after the sale, to the surplus money in the hands of S.

*Held also*, that such surplus money in the hands of S. was the money of M., and was liable to levy and sale on the subsequent execution against M. which came to the hands of S.

THIS cause originated in a justice's court in Delaware county, where the plaintiff recovered. It was taken by appeal to the

VOL. XI.      44

county court, but. the county judge being related to one of the parties, it was transferred to this court.

The defendant was a constable, and having in his hands an execution against the property of one Murphy, he levied on a horse, and advertised it for sale. Prior to the day of sale an attachment came to his hands against the property of Murphy, by virtue of which he attached the same horse. The property was then sold on the first execution, and sufficient was raised to pay the first execution, and leave a surplus to pay the amount due in the attachment suit. After the sale of the horse, judgment was obtained in the attachment suit and execution issued thereon, and the same was placed in the hands of the defendant, who thereupon levied on the same identical money which he had received on the sale of the horse; which money he sold, and applied the avails thereof to satisfy the said execution. Subsequently, the plaintiff took an assignment from Murphy, of his claim for the surplus money raised on the sale of the horse after paying the first execution, and brought this action against the constable to recover it; claiming, that the lien of the attachment on the horse was lost, by virtue of the sale on the first execution, and that the surplus in the hands of the constable could not be levied on, by virtue of the execution issued on the judgment obtained in the attachment suit.

*Wm. Yeomans, jr.* for the appellant.

*T. H. Wheeler*, for the respondent.

*By the Court,* SHANKLAND J. The facts of this case, as well as the finding of the justice, preclude the plaintiff from contending that the horse sold on the process against Murphy was exempt from sale, by virtue of the exemption laws of this state. There remain two questions in the cause. First, whether the attachment, in favor of Millard and others against Murphy, and which was levied on the horse before his sale, on the Cormack execution, was a lien after such sale, on the moneys received for the horse : and second, whether the surplus moneys,

raised by the constable, by a sale of Murphy's property on other process could be levied on, or retained by him to satisfy other executions which came to his hands after the sale, and while the money was yet in his hands.

The attachment was a lien upon the horse before and at the time he was sold on the prior executions in the same constable's hands, and when he was turned into money by that sale, it seems but reasonable that the surplus money should be held subject to the same condition that the horse was.   If the constable had delayed the sale of the horse until judgment had been obtained on the attachment, and execution had issued thereon, and a levy been made upon the horse, no doubt could have been entertained. This surplus, or enough of it to satisfy the execution, could have been applied to it.   But the sale on the prior execution in this same constable's hands was a matter of legal necessity.   He could not return them as unsatisfied, for want of sufficient property, and get them renewed.   And when the execution in the attachment suit came to his hands, how could he have justified a return of nulla bona ?

I am of opinion, that the lien of the attachment on the horse, by operation of law became transferred to the surplus money in the constable's hands, and that it was properly sold on the execution.   This conclusion, on the first inquiry above proposed, will compel the reversal of the justice's judgment, without examining the second question.   But I propose to examine that also.

The legislature have declared (2 *R. S.* 366, § 19,) that upon an execution against the property of a defendant the officer may levy upon and sell any bills or other evidences of debt, issued by any moneyed corporation, *which shall belong to the defendant in the execution.*   None of the decided cases, cited by counsel, have reached the question raised in this.   (4 *Ad. & E.* 399.   1 *Cranch,* 117.   6 *Cowen,* 494.   5 *John.* 163.   3 *Scam.* 451.   1 *Murph.* 47.   3 *Humph.* 437.   4 *Bibb,* 311.   17 *Pick.* 462.)   They were cases, where the money levied on was raised by the sale of property of third persons, or had been received by officers on executions against third persons, and had never been

received by the creditor so as to have become his money, and therefore an execution against him could not reach it, *because it was not his money.* But in this case the money was raised on execution, on the sale of the property of Murphy, and the question is, was not the surplus money, the money of Murphy? If it was not Murphy's, I would like to know whose it was.

It clearly did not belong to the constable, and it was his duty to return it to Murphy, if there was no other process in his hands to justify its detention. If this money had been collected on execution in favor of Murphy against a third person, it may be said not to become his *specific* money until he has obtained possession of it; although the court have sustained that position by very feeble and unsatisfactory reasoning; but when, as in this case, his horse is, by the process of law turned into money, there seems no good reason for saying that the surplus is not his property. The policy of the law, at the present time, is to provide facilities for reaching the property of debtors, in the most direct and least expensive way, while at the same time it grants to them the most liberal exemptions. As an instance, the 293d section of the code allows any one indebted to a judgment debtor, after execution issued against him; to pay the amount of his debt to the officer having the execution, and the receipt of the officer is a full discharge of the debt. Under this section the case in 6 *Cowen's Reports* is provided for, and probably all cases where sheriffs have collected money of third persons in favor of a judgment debtor.

In *Crane* v. *Freese*, (1 *Harr.* 305,) it was held that money, whether in specie or in bank notes, may be taken on execution, if found in the possession of the defendant, or if capable of being identified as his property. And in *Tucker* v. *Atkinson*, (1 *Humph.* 300,) it was held that surplus money in the hands of a sheriff may be attached. In *Williams* v. *Rogers* (5 *John.* 163,) the supreme court would probably have granted the application on the ground that the money could have been levied upon, had it not been for the rights of Coates intervening. The court say, "If the claims of Coates were out of the question, it would be unreasonable to require the sheriff to pay the overplus moneys

into the hands of the defendant, when he held in his possession a subsequent execution against the property of the defendant, and had no means of satisfying it, but out of these very moneys. In such a case, the court would probably be disposed to adopt the reasoning of the supreme court of the United States in the case of *Turner* v. *Fendal,* that the money may be levied on."

It should be observed that the case of *Williams* v. *Rogers,* like that of *Turner* v. *Atkinson,* above cited, was where a *surplus had been raised on an execution against the same defendant,* and in this respect is like the case under consideration.

I am of opinion, that the surplus money in the hands of the coustable was the money of Murphy, within the true intent and meaning of our statute, and was liable to levy and sale on the subsequent execution against said Murphy, which came to the hands of the officer; and that for this reason also, the justice's judgment should be reversed with costs. The costs must be the same as if decided by the county court.

Judgment accordingly.

[Otsego General Term, July 1, 1851. *Moson, Munson* and *Shankland,* Justices.]