## SUPREME COURT.

### John M. Muscott agt. Gilbert E. Woolworth, Sheriff of Lewis County.

Where a *sheriff* receives money, in gold or silver, in payment o an execution in his hands, in favor of the plaintiff, he may make a direct and immediate appli- cation and payment of that money on an execution in his hands *against the same plaintiff.* (*The dicta in some of the cases which seem to favor the idea that the money must first be paid over to the plaintiff before the sheriff can levy and apply it, examined and commented on.*)

*Lewis Special Term, Dec.,* 1856.
DEMURRER to answer.

JOHN M. MUSCOTT, *in person.*
G. L. BROWN, *for defendant.*

BACON, Justice. This action is brought against the sheriff of Lewis county, to recover for money collected by him on an execution in favor of the plaintiff against one James H. Sheldon. The complaint sets forth a judgment recovered by the plaintiff against Sheldon on the 23d of July, 1856, for $120.92, damages and costs, and an execution duly issued thereon; and avers that on the 4th of September, 1856, the said Sheldon, without any levy having been made thereon, paid the amount to the defendant in this suit, as sheriff of Lewis county, who thereupon returned the execution satisfied—that the said money has been duly demanded, and the defendant has refused to pay the same.

The third answer, or defence, alleges that in January, 1852, a judgment was recovered against the plaintiff in this suit for $158.82, in favor of Wm. &. Chas. Tracy, which judgment, after having passed through the hands of an intermediate assignee, was, on the 8th of July, 1856, purchased by, and assigned to said James H. Sheldon; that on or about the 4th of September, 1856, an execution was issued on said judgment, and placed in the hands of the defendant in this suit, as sheriff of Lewis county; that on the same day Sheldon paid to the sheriff the amount of plaintiff's judgment against him, in gold and silver coin; that the sheriff could find no property of Muscott from which he could satisfy the judgment held by Sheldon, other than the coin thus paid him, and thereupon he took the same into his possession and applied it towards the satisfaction, and indorsed it on the execution then in his hands against Muscott.

The question presented by the demurrer is, whether the sheriff is authorized to make such an application of money in his hands?

VOL. XIII. 22

It is contended by the plaintiff, that until the money has passed into the possession, and become actually and tangibly the property of the plaintiff for whose benefit it was paid, it cannot be made the subject of a levy or seizure by the sheriff, and that any appropriation by him until it has thus become, in legal intendment, the property of the plaintiff, is unauthorized, and affords no protection to him in an action for its recovery.

It is admitted that if the sheriff had gone through the form of passing over the money to the plaintiff, and subjecting it even but for a moment to his control, he might instantly have repossessed himself of the same money, and as it was in coin, and no sale thereof was necessary, the identical coin could at once have been applied upon the execution, and returned in *specie* to the hands from which it was received. Does the law require this, which is essentially a mere form, to be gone through with, or will it avoid this circumlocution, and enable the sheriff to do that directly, which an apparently useless ceremony is required to accomplish?

It is claimed, on the part of the plaintiff, that this question has been settled by authority, and, among others, a decision of Chief Justice MARSHALL—"*clarum et venerabile nomen*"—has been invoked as conclusive. It would require some hardihood to dissent from an opinion of that distinguished jurist directly on the point in controversy here. It is true, that the marginal note to the case of *Turner* agt. *Fendall* (1 *Cranch*, 117) enunciates the proposition, that if a sheriff makes the money upon a *fi. fa.*, at the suit of *A.* agt. *B.*, and afterwards a *fi. fa.* against *A.* is put into his hands, he cannot levy it upon the money of *A.* made by the first *fi. fa.*, for it does not become the goods and chattels of *A.* until it is paid over to him. It is true, also, that the chief justice discusses this question, which was subordinate to another, to wit—whether money could be taken at all on execution? and having determined that it could be, concludes, that "*it appears to the court* that the creditor has not such a legal property in the specific pieces of money levied for him, and in the hands of the sheriff, as to authorize that officer to take those pieces on execution as the goods and chattels of

such creditor." But although this might seem a strictly legal conclusion, viewed in connection with the mandate of the execution, yet the absurdity of requiring the officer to seek the plaintiff, and go through the form of payment before re-assuming its possession, and applying the money on the second execution, struck the mind of that learned jurist, for he immediately adds, " But the money becomes liable to such execution the instant it shall be paid into the hands of the creditor, and it then becomes the duty of the officer to seize it. It appears unreasonable that the law should direct a payment under such circumstances. If the money shall be seized the instant of its being received by the creditor, then the payment to him *seems a vain and useless ceremony, which might well be dispensed with;* and if the money should, by being so paid, be withdrawn from the power of the officer, then his own act would put beyond his reach property rendered by law liable to his execution, and which, of consequence, the law made it his duty to seize." The absurdity, he adds, involved in such a construction, led the court to a further consideration. He then proceeds to consider what was the duty of the sheriff in that case; and after conceding that he might have paid the money collected by him out of court to the plaintiff in the execution, unless there had been some legal obstruction—such as an injunction forbidding its payment, *or an execution against the goods and chattels of the person to whom the money in his hands shall be payable,* he concludes that, under the statute of Virginia, and by the express form and requisition of the execution, it was the sheriff's duty to bring the money into court; and not having done this, his voluntary payment was not a justification; and this was really the point upon which the case turned—and it is only an authority to that extent.

The only other case which seems to bear upon the proposition asserted by the plaintiff, is *Dubois* agt. *Dubois,* (6 *Cow.* 494.) That case, so far as it relates to the point we are now discussing, was shortly this: The surrogate decreed that *A.* should pay *B.* a sum of money. *A.* laid it down on the table before the surrogate, who took a part, and the residue was at-

tached by a constable under process in favor of *A.* against *B.*
It was held that this was not such a payment as would vest the
money specifically in *B.*, and therefore it was not the subject
of an attachment. In this case, it will be perceived, that the
surrogate had no authority to receive the money, and his recep-
tion of it was, in no sense, a reception by or on the behalf of *B.*
And this is the ground on which the court put their judgment:
"payment into court being," says Chief Justice SAVAGE, "no
compliance with the decree, which was that the payment should
be made to the plaintiff."

In the case before us, however, it is undeniable, that the
payment to the sheriff of the execution, by Sheldon, was a per-
fect satisfaction of the plaintiff's demand: the sheriff was the
proper officer to receive it; and his return of the execution
satisfied, instantly and perfectly discharged the judgment, and
transferred the right which the plaintiff theretofore had in it
to a right clear and potential to the money which satisfied it.

The chief justice adds, indeed, that "we have decided that
a levy upon money collected by, and in the hands of an officer,
on execution, was not a levy upon the goods and chattels of
the person for whom it was collected, because the identical
pieces of money collected are not necessarily to be paid over
to him." *Where* this was decided he has not told us. No
reported case in this state, that I have been able to find, con-
tains any such doctrine, which, it must be conceded, proceeds
upon a very narrow and technical ground. It is enough, how-
ever, that the proposition was not necessary to the decision of
the question that arose in the principal case, and it has not the
weight, therefore, of an authority on the point now before us.

The case of *Williams* agt. *Rogers*, (5 *John.* 163,) which is
also claimed as an authority in the plaintiff's favor, was simply
the case of a motion to compel the sheriff to pay over surplus
moneys in his hands, derived from an execution, to the plaintiff
in a subsequent execution against the same defendant, and the
court declined to make the order, on the ground that there was
an assignee of the first judgment, who had equitable rights
which might be affected by the order. In deciding the case,

the court say, "if the claims of Coats (the assignee) were out of the question, it would be unreasonable to require the sheriff to pay the overplus moneys into the hands of the defendant, when he held in his hands a subsequent execution against the property of the defendant, and had no means of satisfying it but out of these very moneys. In such case, the court would probably be disposed to adopt the reasoning of the supreme court of the United States in the case of *Turner* agt. *Fendall*, that the money may be levied on."

The principle thus enunciated covers the case before me, and I adopt it as the reasonable and just rule; and as dispensing with what Chief Justice MARSHALL aptly designates as the "vain and useless ceremony" of paying over the money, and instantly reclaiming and applying it on the debt of the party to whom it belonged, and to the payment of which it justly should be appropriated.

This reasoning was adopted in the case of *Wheeler* agt. *Smith*, (11 *Barb*. 345,) and applied to a case where surplus moneys had accrued from the sale of a horse of one Murphy, on an execution, and where an attachment against the same party (Murphy) had been levied after the execution. The court held, indeed, that the lien of the attachment, by operation of law, became transferred, after the sale, to the surplus money in the hands of the constable; but they held also that the surplus money in the hands of the officer was the money of Murphy within the true intent and meaning of the statute, and was liable to levy and sale on the subsequent execution against him.

In this case, the money being coin, no sale was required to be made by the statute, (2 *R. S.* 3*d ed*. 464, § 19,) but the application could be made at once as a payment on the execution, and it was so applied and indorsed. The policy of the law is now to reach the property of debtors in the most direct and inexpensive manner. The same end might unquestionably have been secured by a payment of the money into court, and driving the party entitled to it to a motion to compel its delivery to him; and I think the law should sanction the more simple and cheaper process, by which the sheriff is enabled to

Samuel and another agt. Buger and another.

accomplish the same result by making the direct and immediate payment to the party justly entitled to the money.

There must be judgment for the defendant upon the demurrer.